IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

IN RE:    DANIEL THOMAS HENRY    DEBTOR
           MARGARET JEAN HENRY    JOINT DEBTOR

CASE NO.: 3:12-BK-34152

CAROLYN A. VENDRAMIN    PLAINTIFF

VS.    AP NO. _____

DANIEL THOMAS HENRY
MARGARET JEAN HENRY    DEFENDANTS

**COMPLAINT TO DETERMINE DISCHARGEABILITY,
OBJECTION TO DISCHARGE, & REQUEST FOR RELIEF OF STAY**

Comes now Carolyn A. Vendramin, by her attorneys, Gordon A. Etzler & Blake N. Dahl of Gordon A. Etzler & Associates, LLP., and for her Complaint to Determine Dischargeability, Objection to Discharge, Request for Relief of Automatic Stay, and states to the court as follows:

**PARTIES, BACKGROUND, FACTS**

1. The Debtors/Defendants Daniel Thomas Henry & Margaret Jean Henry (hereinafter referred to as "Henry"), filed for Chapter 7 Bankruptcy in this case on or about December 14, 2012.

2. Plaintiff/Creditor Carolyn A. Vendramin (a/k/a Carolyn A. Pinkston) (hereinafter referred to as "Vendramin"), is a Creditor in the Henry's Bankruptcy and a former investor and minority shareholder in the Henry's company Henry-Cap Construction, Inc.

3. The Henry-CAP Construction, Inc., (hereinafter referred to as "Henry-CAP") is an Indiana corporation created on September 17, 2001, in the State of Indiana, whose principal activity is general construction business with its principal place of business at 1112 Clay Street, Mishawaka, Indiana. It's registered agent is attorney Jeffery Johnson.

4. Henry-CAP is a closely held corporation having elected Sub-S status pursuant to the Internal Revenue Code by its two (2) Shareholders and Directors.

5. At the time of its formation to present day, Vendramin and Daniel T. Henry jointly caused the corporation to be formed for their personal, common benefit and profit to engage in the general construction business in the Mishawaka/South Bend area.

6. Vendramin and Henry agreed to enter into this joint venture under the name of the Henry-CAP and to divide ownership and share losses and profits in the ratio of one-third (1/3) to Vendramin and two-thirds (2/3) to Henry. Vendramin's initial financial contribution was Thirty-Three Thousand and 00/100 Dollars ($33,000.00) and it is believed that Henry's initial contribution was Sixty-Three Thousand and 00/100 Dollars ($63,000.00). The corporation was formed to have two (2) members constitute the Board of Directors with each being elected to the Board. The joint agreement between the parties, also set forth that each would devote their best efforts and endeavors fulltime to start, foster and enhance the value of Henry-CAP to be financially rewarding for each over their careers. It was agreed that each provide principal executive services as they determined for Henry-CAP. **(EXHIBIT A)** - The Articles of Incorporation).

7. Henry and Vendramin engaged as their legal counsel, the law firm of May, Oberfell and Lorber, and specifically Jeffrey A. Johnson. Henry and Vendramin jointly engaged

the CPA firm, Schmanski, Jurgonski & Fredlake CPA of Mishawaka as its consulting accountants to prepare accounting records, financial statements and their tax returns. As their legal and accounting professionals, the law firm and the accounting firm owe to each party a professional and confidential relationship and duty in providing legal advice and in sharing important, confidential information.

8. Vendramin and Henry as part of their joint venture agreed to organize Henry-CAP and in furtherance of the success of the entity, executed a Shareholders Buy/Sell Agreement, a copy of which agreement is attached hereto and identified as **(EXHIBIT B)**.

9. The Corporation was financially and as a business enterprise successful, (until the Henry's intentional taking of funds), periodically making distributions to the parties. Gross sales for the first six (6) months of 2008 were Two Million Three Hundred Fifty-Three Thousand Five Hundred Twenty-Eight and 18/100 Dollars ($2,353,528.18) and Balance Sheet Assets ending July 31, 2008, were One Million Seven Hundred Fifty-Seven Thousand Eight Hundred Seventy-Six and 41/100 Dollars ($1,757,876.41).

10. As the sole shareholders and sole members of the Board of Directors and by virtue of their positions as Shareholders and Board members, the legal relationship each to the other is one of fiduciary and contractual duties created by law and by contract to treat and deal with each other and the Corporation in a fair and equitable manner and not to take unfair advantage of the other.

11. Without legal cause or justification on the 2nd day of September, 2008, Henry as the majority shareholder unilaterally interfered with the joint enterprise agreement concerning Vendramin's ownership, contractual interests and gainful activity of providing executive services

for Henry-CAP, and ejected her from the premises and removed her from her duties and responsibilities by letter dated September 2, 2008, a copy of which letter is attached hereto and identified as **(EXHIBIT C).**

12. In response to being frozen out of the company and her investment in ownership of the company being intentionally stolen from her by the Henry's, Vendramin initiated a lawsuit on or around December 22nd 2008, against the Henry's, in the state of Indiana, in the St. Joseph County Circuit Court, Cause No. **71C01-0812-PL-00280**, Honorable Judge Michael G. Gotsch; Original Complaint **(EXHIBIT D)** and Amended Complaint **(EXHIBIT E)**, and Official CCS **(EXHIBIT X)**. Furthermore, as part of discovery, Venderamin requested the court to compel discovery of information Vendramin believes would reveal thousands of dollars and equipment transferred to companies owned by relatives of the Henry's but the Henry's filed for Chapter 7 Bankruptcy relief on or about , BK Filing **(EXHIBIT F)**, thereby limiting the ability of the Court to further compel discovery.

13. Previous to, and after, being intentionally "frozen out" of her investment/ownership/management in Henry-Cap by the Henry's, it is believed that the Henry's embezzled several thousands of dollars from Henry-Cap by using corporate bank accounts as their own, paying most of their personal expenses and bills with corporate funds, cash withdraws from corporate accounts, paying their Children's bills and expenses with corporate funds, usurping corporate opportunities contracts and equipment to other companies owned by the Henry's and their relatives. The Henry's did not claim this money as income as required Federal and State Tax Code and they intentionally failed to include it in their Bankruptcy Income Calculations. Below Include many but not all examples of embezzlement and or fraudulently transferred property to avoid creditors:

A.    **(EXHIBIT G)** Auto Insurance. The Henry's Embezzled Corporate Funds to pay their personal automobile insurance; they placed their personal automobiles on the corporate insurance policy.

B.    **(EXHIBIT H)** Corporate Credit Card Statement. Charges from Lafayette, IN where Henry's son(s) went to school and made charges to the Corporate Card. Personal restaurant charge, Wilson's Leather, Dicks Sporting Goods, Target, Pottery Barn, Kohls, TIFFANY, Best Buy, Burton's Laundry, Speedway ($384?) probably speedway cards for family.

C.    **(EXHIBIT I)** Corporate Credit Card Statement. Personal Charges with Corporate Card including: Circuit City, Trio's on 12/31, University Bookstore (West Lafayette), SallieMae, Bob Rohrman (West Lafayette), Bookstore Purdue, Pinnacle Athletic Club, Sams Renewal, several restaurant charges.

D.    **(EXHIBIT J)** Corporate Credit Card Statement. Personal Charges with Corporate Funds from Apple Vacations, Viola shoes, St Joseph Care foundation, Apple computer (business didn't use Apple products), Sheraton Hotel, Amstar Playa Del Car, all of the MX (Mexico) charges, and Comcast (didn't have Comcast for business).

E.    **(EXHIBIT K)** Record of Payment to Father. This document shows corporate funds being embezzled to pay a personal loan from Robert Henry (Daniel Henry's Father). Vendramin believes payments to Henry's Father from Corporate funds total $300,000.00.

F.    **(EXHIBIT L)** Articles of Director Non-Payment. This document within the company articles explains that no Director is to receive compensation for

acting in their capacity; however, Daniel Henry paid funds to Margaret Henry on multiple occasions.

G. **(EXHIBIT M)** Invoice & Payment to Henry Enterprises LLC. This document shows an invoice from Henry/Cap to Henry Enterprises, a separate company owned by Daniel Henry but was not known to have existed by the other shareholder "Vendramin" and was not listed as a related party on company financials. This is another obvious example Henry usurping corporate contracts from Henry/Cap to other companies he owns and embezzling funds that belonged to the company.

H. **(EXHIBIT N)** Henry Enterprises Sub-Contract. This document evidences further, the extent of the subcontracting engaged by the Henry's.

I. **(EXHIBIT O)** Coding Report. This document shows bookkeeper coding debit card transaction to Daniel and Margaret Henry, personal charges being paid by the company.

J. **(EXHIBIT P)** Rent to Henry's. This document shows the company paying rent to the Henry's for their use of it with the company. Vendramin believes this income was not included in the Henry's taxes, nor was it included in calculation of the Henry's income for bankruptcy purposes; this income being completely undisclosed.

14. Henry-Clay, LLC., was created on 12-21-2011 for the sole purpose of holding real-estate owned by Daniel Henry, it was owned and operated by Robert Henry, Father of Defendant Daniel Henry, for the purpose of holding real-estate owned by Daniel Henry and protecting it from being seized in bankruptcy or as payment for damages in the lawsuits pending

against Daniel Henry. On January 18th 2012, Daniel & Margaret Henry, as individuals conveyed/transferred real estate property, 1117 N. Benton St. Mishawaka, IN 46545 to Henry-Clay, LLC., for $5,000.00, substantially below the assessed value of $16,000.00. Additionally, on January 18th, 2012 Daniel & Margaret Henry, as owners/operators/managers of Henry-Cap Construction, Inc., transferred/conveyed commercial real estate, 1112 Clay St. Mishawaka, IN 46545 to Henry-Clay LLC., owned by Robert Henry, for $55,515.00, substantially below the assessed value of $114,600.00 As planned, Daniel & Margaret Henry transferred all or almost all of the corporate money and assets of Henry-Cap to family members and their businesses, all of which are in the same industry and then safely filed personal chapter 7 bankruptcy on December 14th 2012 to avoid liability from their actions while operating the company. However, Daniel & Margaret Henry intentionally failed to disclose any of their money or asset transfers on their bankruptcy schedules, as well as failing to disclose rental income he was receiving for the use of the property he sold to Henry-Clay, LLC. Upon discovery of these transfers, to relatives and their companies, Plaintiff Vendramin filed an amended complaint, in state court, adding in Daniel Henry's Relative Robert Henry, and the Companies owned by his family members, alleging, among other things, a conspiracy to defraud and fraudulent transfers of equipment, contracts, money, and real estate property, in an effort to defraud Carolyn Vendramin and other potential Plaintiffs with pending lawsuits against Daniel Henry see federal law suit **1:12-cv-00009-SEB-DKL** Southern Jurisdiction Indiana, CCS (**EXHIBIT Q**). This process of moving assets from one corporate entity to the next when the former begins to experience legal trouble or facing bankruptcy, and leaving the former entity as an empty shell with no assets and nothing for creditors or plaintiffs to recover, is commonly used tactic by people to continually keep assets and money while taking advantage of the protection afforded by corporate status.

13. By these actions, Henry individually on his behalf of Henry-CAP violated and breached his fiduciary duties to Vendramin as a minority shareholder and a member of the Board of Directors and of their joint enterprise agreement, as a consequence she sustained injury and damage. This unilateral action was done without legal cause or justification which breached his fiduciary duty to Vendramin, their joint venture contractual agreement in forming the corporate entity and violated provisions of the bylaws of Henry-CAP.

12. Margaret Jean Henry is the spouse of Daniel T. Henry, she is made a party to this action because she is listed as an officer and member of the Board of Directors of Henry-CAP on the reporting form filed with the Indiana Secretary of State Office. It is believed and Vendramin has reason to believe that she has involvement with the actions of Daniel T. Henry. Vendramin was unaware that she was to be a member of Board of Directors.

13. Vendramin believes and has reason to believe that Henry's and Henry-CAP entered into a plan, scheme and device to unlawfully "freeze out" and forced out Vendramin from the Corporation and from its operations and management to cause her to lose the value of her shares, and cause her financial detriment and injury, for their own personal financial gain and benefit. These actions were done in a reckless, intentional, and malicious manner for which the Henry's and Henry-CAP severally and jointly are liable for punitive damages, in an amount to be determined by the Court.

14. Pursuant to paragraph seven (7) of the shareholder Buy/Sell Agreement the formula to value the Corporation to determine the value of Vendramin's shares is "(1%) of the work in progress, which consists of the sum of the balance owing on existing contracts being

performed, but that are not yet completed and contracts in existence that have not yet commenced." The amount of the value of Vendramin's one-third (1/3) interest in Henry-CAP can only be determined by a review of financial records and contracts, but is believed to be in excess of Seven Hundred Fifty Thousand and 00/100 Dollars ($750,000).

15. Furthermore, Vendramin believes and has reason to believe that Henry and Spouse have taken corporate funds for their own personal benefit and for their family, to acquire real estate. Furthermore, it is believed and Vendramin has reason to believe that other corporate expenses have been incurred to the personal benefit of Henry and Spouse and that incorrect, erroneous and false information have been submitted to the Internal Revenue Service. It was requested that amended tax returns be filed, so that Vendramin does not incur personal liability or responsibility for additional tax, interest or penalties because of inaccurate, erroneous or false tax returns.

Relief

16. The Debtor/Defendant should be denied a discharge of the debts and obligations referred to herein pursuant to 11 U.S.C. 522(a)( 4) as a result of the Debtor/Defendant's conduct while acting in a fiduciary capacity as Majority Shareholder and President of Henry-Cap, LLC.

17. The Debtor/Defendant should be denied a discharge because he, while acting as a fiduciary for the entities mentioned herein, falsified records (Defalcation of Records) as would ordinarily be required of a fiduciary.

18. The Debtor/Defendant should be denied a discharge because he embezzled Corporate funds and now attempts to seek bankruptcy protection against the personal liability from his embezzlement.

19. That Debtor/Defendants should be denied a discharge for failing to disclose real property transfers from their ownership to a family member and for failing to disclose income received from rental payments of said property.

20. The Plaintiff asserts any and all other grounds that may exist for the court to deny Defendant/Debtor a discharge.

21. In the Alternative, Plaintiff requests this Honorable to delay the granting of a discharge, grant relief of the automatic stay, and determine dischargeability of this debt based on the outcome of the Indiana State Court proceedings in the St. Joseph County Circuit court as previously mentioned.

**WHEREFORE,** Plaintiff Prays that the debtor/defendants be denied a discharge in this case, that the court determine dischargeability of this debt as non-dischargeable, grant relief of stay to the Plaintiff, and for all other relief to which Plaintiff may be entitled.

Respectfully Submitted,

GORDON A. ETZLER & ASSOCIATES, LLP
Attorney for Plaintiff

By: _____
Blake N. Dahl 30576-64
251 Indiana Ave.
Valparaiso, IN 46383
Phone: 219-531-7787
Fax: 219-531-4 732
E-Mail: BND@Etzlerlaw.com