**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 12-34152 |
| DANIEL THOMAS HENRY and | ) | Chapter 7 |
| MARGARET JEAN HENRY | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| CAROLYN A. VENDRAMIN, | ) | |
| | ) | Adv. Proc. No. 13-03061 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL THOMAS HENRY and | ) | |
| MARGARET JEAN HENRY | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' PORTION OF PRE-TRIAL ORDER**

In accordance with this Court's Order dated September 3, 2014 [Docket #36], Defendants submit the following as their portion of the proposed pre-trial order:

       I.      Statement of Defendants' Defense and a Summary of the Facts to be Proven

Defendants have had a difficult time ascertaining what exactly is being alleged and what relief is being sought by the Plaintiff through her Complaint. Plaintiff has been wildly throwing accusations against Defendants since December of 2008 and, unfortunately, has never been able to enunciate any cogent theory of recovery.

As it pertains to this Adversary Proceeding, the Complaint was designated on the Court's docket as asserting an objection to Defendants' discharge as well as specific claims related to the dischargeability of Defendants' purported debt to Plaintiff. The allegations and prayer for relief

1

contained in the actual complaint, however, do not provide much in the way clarity and, in fact, do not support the designated relief requested.

### A. Objection to Discharge was not pleaded by Plaintiff nor was it part of the relief requested by Plaintiff in the Complaint. Moreover, Plaintiff waived the right to seek objection to discharge when the parties narrowed the issue in the previous pre-trial order.

Plaintiff fails to properly allege the grounds to constitute a bar to Defendants' discharge and, accordingly, such objection cannot be sustained.   Specifically, the Complaint makes no allegations constituting grounds to object to discharge.  Likewise, in the "Relief" section of her Complaint, Plaintiff makes general assertions, using the terminology from 11 U.S.C. §523, to request that Defendants' discharge be denied.  Plaintiff's failure to state her allegations with particularity is not only in contravention to Federal Rule of Bankruptcy Procedure 7009, but renders it impossible for Defendants to properly prepare their defense.   Based on the § 523 terminology, and previous discussions among counsel, Defendants have believed Plaintiff is only seeking a determination that the alleged indebtedness constitutes a non-dischargeable debt under 11 U.S.C. § 523.  In fact, Plaintiff stipulated to as much in the first Joint Pre-Trial Order within which she agreed that the only legal matters at issue related to dischargeability under 523.

To the extent Plaintiff would be permitted to now seek a denial of the discharge, Plaintiff fails to sustain an objection under any provision of 11 U.S.C. § 727.   11 U.S.C. § 704(a)(6), requires a trustee to object to a debtor's discharge if it is advisable.  In the case at hand, the evidence will demonstrate that the Trustee conducted a thorough 7 month investigation, based primarily on Plaintiff's allegations.  Defendants fully cooperated with and provided the Trustee with all requested information.  The Trustee ultimately rendered a No Distribution Report and found the estate to be fully administered.   Due to Defendants' full cooperation and disclosure to the Trustee, Plaintiff could not allege, nor could she produce, credible evidence that any action of

2

Defendants was done with actual intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code.

### B.  Plaintiff may not pursue any claims sounding in fraudulent transfer.

The Complaint makes several allegations regarding allegedly fraudulent transfers and seems to allege recovery of certain fraudulent transfers as well as alleges wrongdoing on the part of Defendants' counsel.   11 U.S.C. § 544(b) gives a trustee in bankruptcy the power to avoid, for the benefit of the bankruptcy estate, a fraudulent conveyance of property that would be voidable under state law by a creditor holding an allowable unsecured claim.  The commencement of Defendants' bankruptcy "gives the trustee the right to pursue fraudulently conveyed assets to the exclusion of all creditors."  *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993).  While a creditor may regain standing to pursue a state law fraudulent conveyance action, in its own name and for its own benefit, once the statute of limitations expires on the bankruptcy trustee's right to bring a claim, such suit must be filed or revived in a non-bankruptcy forum. *Barber v. Westbay*, 313 B.R. 419, 427-28 (Bankr.C.D.Ill. 2004).

Plaintiff corresponded extensively with the Trustee concerning Plaintiff's contentions of fraudulent transfer.  After reviewing all information provided, the Trustee opted not to pursue any fraudulent transfer claim.  While Plaintiff may have the ability to pursue third-party transferees outside of bankruptcy for alleged fraudulent transfers, she lacks standing to pursue such claims against Defendants in this adversary.[1]

---

[1] While the Complaint seems to state a claim for fraudulent transfer, Defendants note that Plaintiff never made any attempt to join any alleged transferees to this adversary proceeding.  Even supposing standing, it is unclear what relief, if any, the Court could possibly grant as against the transferor of alleged fraudulent transfers.  The cause of action lies against alleged transferees.

### C.  *Plaintiff's claims of embezzlement and defalcation within a fiduciary capacity*

As narrowed by the parties in the original Pre-Trial Order, the questions for this Court to answer, based on the evidence presented are: (1) whether the Defendants stood in a fiduciary relationship with Plaintiff within the meaning of 523(a)(4); (2) if so, whether Defendants committed defalcation while acting within that fiduciary capacity; and (3) whether Defendants embezzled funds owed to the Plaintiff. Plaintiff will fall well short of her burden on all three questions.

### *Brief Summary of Facts to be Proven at Trial*

The evidence will demonstrate that Dan Henry and Plaintiff formed Henry/Cap Construction, Inc. in 2001.  It was very successful.  The initial stock ownership was 2/3 Dan Henry and 1/3 Plaintiff.  Over time, additional capital calls were made.  Plaintiff did not participate in the capital calls and her ownership share was reduced to 19.05%.  Until 2008, both Dan and Plaintiff were employed by the company.  Dan Henry principally ran the operations of the company while Plaintiff set up and maintained the corporation's books.

Importantly, when Plaintiff set up the books for the corporation, she included accounts chargeable to both herself and Dan Henry for any personal expenses of either of them that were paid by the company.  Each time a personal expense showed up on the corporate credit or debit card, it would be booked as a payable from the shareholder to the corporation.  It was the regular practice of both Dan Henry and Plaintiff to make such expenditures and refund the corporation.

In 2008, for reasons that are still unknown to Defendants, Plaintiff stopped showing up to work.  Dan Henry attempted to communicate with Plaintiff regarding her reasons but was never provided with any response. Ultimately, due to her failure to come to work, Plaintiff's employment was terminated.

4

Like most construction and real estate businesses, 2008 and 2009 were extremely tough for Henry/Cap. It sustained losses of over $300,000 in 2008. It never fully recovered. Weighed down with mounting obligations to banks, several unions, and professionals, Henry/Cap ceased business in 2011. It formally dissolved in February of 2013.

In the interim, between 2008 and 2011, Dan Henry infused over $300,000 of his own funds (i.e. his life savings and retirement) to keep the company afloat. Additionally, Dan Henry regularly failed to take a paycheck, or took discounted paychecks, during this time. At the time Henry/Cap dissolved, the company owed Dan Henry approximately $250,000. During that entire time, Plaintiff failed to contribute, in any way, to the operations of the Company; rather, she continued to pursue state claims against both Dan Henry and Henry/Cap in state court—further diverting the company's resources from its operations.

After Henry/Cap failed, Dan Henry attempted to start a new, small construction company. That company also failed and Dan and Jean Henry were left with no choices but to seek bankruptcy protection through this Court.

*Defalcation while acting in a Fiduciary Relationship*

Section 523(a)(4) of the Bankruptcy Code excepts from discharge, among other things, any debt for "defalcation while acting in a fiduciary capacity." Before the Court can find a debt nondischargeable under this exception, the Court must find that a fiduciary relationship existed between the debtor and creditor and that the debtor committed defalcation in the course of that fiduciary relationship. *See, In re Grotrian*, 217 B.R. 1017, 1020 (Bankr.N.D.Ind. 1997). Moreover, as the Supreme Court recently found in *Bullock v. BankChampaign*, 133 S.Ct. 1754 (2013), proving defalcation requires a showing of wrongful intent.

Plaintiff cannot sustain this burden. First, to the extent Henry/Cap paid personal expenses of Dan Henry, such expenses were booked as a payable from Dan Henry to the corporation. It was done in the open and with every intention of paying back the corporation. Moreover, Dan Henry infused his life's savings and retirement into the company between 2008 and 2011. This amount completely offsets any amounts payable by Dan Henry to the company and, in fact, at the time the company dissolved, it owed Dan Henry a substantial amount for the loans he made to the company.

*Embezzlement*

The Bankruptcy Code does not allow a debtor to discharge a debt incurred as a result of the debtor's embezzlement. Embezzlement has long been defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." To prove embezzlement, a creditor must show that a debtor (1) appropriated funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit. *See, e.g. In re Taylor*, 58 B.R. 849, 855 (Bankr.E.D.Va. 1986).

Once again, Plaintiff will fall short of her burden. While certain, minimal expenses[2] were paid for Dan Henry by the corporation, the expenses advanced were booked as a payable back to the company by Dan Henry. There was never any intent to deceive anyone. In fact, booking expenses as a payable back to the company is the opposite of deceit. In any event, Dan Henry ultimately infused approximately $300,000 back into the Company, of which $250,000 was not paid back to him.

---

[2] See paragraph 13 of the Complaint wherein it lists the type of transactions Plaintiff complains of, such as gas, food, dry cleaning, athletic clubs, etc.

*Damages*

None of Plaintiff's claims against Defendants are direct claims.  That is, her claims all allege that Defendants embezzled or defalcated funds belonging to Henry/Cap, and from such action, she suffered harm as a shareholder of Henry/Cap. While Indiana allows shareholder in closely held corporations to pursue claims such as these, which are derivative in nature, through a direct lawsuit against a shareholder,[3] the damages recoverable remain derivative.  Plaintiff bears the burden of proving that she would receive any funds returned to the corporation by Dan Henry.  Plaintiff will be unable to do so.

At the time it dissolved, Henry/Cap was facing debts well in excess of $500,000 to third-parties (and not including its debts due and owing to Dan Henry).  Under the absolute priority rule and general principles of corporate law, those debts would need to be satisfied before any distribution could be made to shareholders of Henry/Cap.  Accordingly, to prove a debt owed to her, Plaintiff would first need to demonstrate Defendants embezzled an amount exceeding Henry/Cap's debts.  Plaintiff's damages would be limited to 19.05% of anything in excess of this amount.[4]

## II.    DEFENDANTS' EXHIBITS

Defendants may offer any or all of the following exhibits at trial:

     a.   Henry/Cap Bylaws;

     b.   Shareholder accounts payable records of Plaintiff to Henry/Cap documenting personal expenses paid by the company on her behalf;

     c.   Shareholder accounts payable records of Dan Henry to Henry/Cap;

     d.   Checks evidencing loans made by Dan Henry to Henry/Cap and Henry/Cap's Quickbooks records regarding such loans;

---

[3] *See Barth v. Barth*, 659 N.E.2d 559 (Ind. 1995).
[4] *See G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227 (Ind. 2001) (Affirming award to minority shareholder of unpaid dividends based on shareholder's ownership percentage).

e.  Tax Returns and related documents, including forms W-2 and 1099, for Dan and Jean Henry for 2012, 2011, 2010, 2009, 2008, 2007, 2006, 2005, 2004, 2003, 2002, and 2001;

f.  Corporate tax returns filed on behalf of Henry/Cap from 2008 through 2012;

g.  Ledger Card Reports/wage payment history for Dan Henry;

h.  Loan documents made by Robert A. Henry to Henry/Cap and/or Dan Henry for the benefit of Henry/Cap;

i.  Transcript of deposition of Judy Gushwa;

j.  Transcript of deposition of Greg Jurgonski;

k.  Transcript of the deposition of Allison Swinehart

l.  Correspondence between Defendants' counsel and the Trustee as well as between the Trustee and Plaintiff's counsel;

m. The pleadings;

n.  Demonstrative summaries of loans and funds paid by Defendants to Henry/Cap; and

o.  Any documents necessary for rebuttal or impeachment.

## III.   **DEFENDANTS' WITNESSES**

Defendants witnesses may include any or all of the following witnesses at trial:

a.  Defendants;
b.  Plaintiff;
c.  Judy Gushwa;
d.  Timothy Short;
e.  Don Rohrer;
f.  Tom Henry;
g.  Lauren Davis, CPA;
h.  Wayne Stewart;
i.  Terry Hickey;
j.  William Batteast
k.  Any and all rebuttal or impeachment witness;
l.  Any witnesses listed by Plaintiffs

/s/ Trevor Q. Gasper
Trevor Q. Gasper (26368-71)
Attorney for Defendants

**MAY • OBERFELL • LORBER**
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545
Telephone: (574) 243-4100
Facsimile: (574) 232-9789

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Blake N. Dahl, Esq., Gordon Etzler, Esq., Gary D. Boyn, Esq. and Nancy J. Gargula, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: N/A.

/s/ Trevor Q. Gasper