UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 12-34152 |
| DANIEL THOMAS HENRY and | ) | Chapter 7 |
| MARGARET JEAN HENRY | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| CAROLYN A. VENDRAMIN, | ) | |
| | ) | Adv. Proc. No. 13-03061 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL THOMAS HENRY and | ) | |
| MARGARET JEAN HENRY | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT PRETRIAL ORDER

Pursuant to the Order of the Court, attorneys for the parties to this action submit the following proposed Joint Pretrial Order.

1. <u>Statement of Compliance</u>:  In accordance with this Court's Order for Final Pre-Trial Conference entered on September 3, 2014, the parties each filed their respective portions of the pre-trial Order on September 17, 2014.  In addition, Blake Dahl, counsel for Plaintiff, and Trevor Gasper, counsel for Defendants, met and conferred, in person, on Friday September 26, 2014.

2. <u>Jurisdiction.</u> This court has jurisdiction of this adversary proceeding and this is a core proceeding within the meaning of 28 U.S.C. §157(b)(1).

3. <u>Parties.</u> Plaintiff is represented by Blake Dahl and Gordon Etzler of Gordon Etzler & Associates, LLP.  Defendants are represented by Jeffery A. Johnson and Trevor Q. Gasper of May Oberfell Lorber.

4. <u>Status of the Record.</u>  Plaintiff filed her Complaint for Nondischargeability on September 23, 2013.  Defendants filed their Answer and Affirmative Defenses on October 24, 2013.  There are no pending motions at this time.

1

5. <u>Plaintiffs' Statement.</u>

**Dischargeability of Debt Owed to Plaintiff**

Plaintiffs **first** theory for recovery, falls under § 523(a)(6) of the Bankruptcy Code in that a discharge under this title does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity. That the Henry's (majority shareholders) intentionally and maliciously "froze out" Carolyn (minority shareholder) from her ownership interest and value in the close corporation Henry-CAP Construction, Inc. Under Indiana Law, as a majority shareholder in a close corporation, the Henry's owed a fiduciary duty to the company as well as the minority shareholder Carolyn Vendramin. This intentional action by the Henry's caused a willful and malicious injury to Carolyn, being a deprivation of her rights, interest & operation of the company, as well as her initial contribution and current value of her interest in the corporation and is therefore non-dischargeable under § 523(a)(6).

Plaintiffs **second** theory for recovery, falls under § 523(a)(4) of the Bankruptcy Code, in that a discharge under this title does not discharge an individual debtor from any debt for 'fraud or defalcation while acting in a fiduciary capacity', embezzlement, or larceny. That the Henry's individually and while acting as a fiduciary of the company, embezzled thousands of dollars in company money (defalcation) to pay for personal expenses and purchases of their own (see complaint); money that otherwise could have been used to pay creditors and maintain the value of the company. That individually and while acting as fiduciaries of the company, they instructed the company's CPA's to record false information in the company financials to cover up their embezzlement, rising to the level of fraud. That these acts caused Carolyn financial injury, as these funds could have been used to pay her interest in the company as well as other creditors.

**Plaintiff's Supporting Factual Statement**

The Henry-CAP Construction, Inc. was formed by Carolyn A. Vendramin and Daniel T. Henry in 2001. It was agreed between the parties that each would contribute monies for the use of the company in exchange for their stock with each being a member of the Board of Directors. Carolyn's contribution for the purpose of one third (1/3) of Henry Capp Construction Co. was approximately thirty five thousand ($35,000) dollars. It was further agreed that each would be paid a salary agreeable to both with certain fringe benefits also as agreed by both and that each would have a company credit card for business purposes.

The organizational meeting took place in the Law Offices of Jeffery Johnson in South Bend, IN in the presence of the three (3) persons and Mr. Johnson was to draft the corporate documents at the parties have agreed. Generally, the joint management was allocated between the two, Daniel and Carolyn, with Daniel doing the management of the portion of the business for performing the contracts and Carolyn would manage the office functions, including the contract receipts, banking and other financial and accounting matters.

Over a period of approximately four to five (4-5) years the company was very successful. Then Carolyn started to notice that company funds and the company credit card as well as cash withdrawals were being used by Daniel for his personal and family purposes (embezzling funds that otherwise belonged to the corporation). She began having discussions with the outside CPAs concerning this practice and learned that Daniel was advising the CPA's that these expenses should be categorized as ongoing expenses for specific jobs and should be allocated as such, even though such statement was clearly false.

Carolyn then discovered not only was he diverting company funds for personal uses but that he purchased real estate in his own name and was paying rent to himself to pay the mortgage

3

out of company funds and had formed a different construction company in which he was diverting some contracts. Daniel became very upset that Carolyn was talking with the CPAs and continued investigating the matter but did not confront her personally or explain the reason or purpose for such use of company funds and credit cards.

After a few months in the evening Daniel came to the home of Carolyn and told her she had been relieved of all duties, that she should not appear back at the office and took her building keys. Daniel also requested that she return her computer but she refused stating it was hers and contained her information and would keep it. Under Indiana Law shareholders in a closely held corporation are clothed with a fiduciary relationship to each other which requires each even if they are a majority shareholder must deal fairly, honestly and openly with the corporation, shareholders, and business. *Krukemeier v. Krukemeier Machine & Tool Co.*, 551 N.E.2d 885 (Ind. Ct. App. 1990).

A majority shareholder violates the fiduciary duty to discharge a minority shareholder by engaging in any action which would constitute a "freeze out". The majority shareholder is liable for damages caused including the obligation to pay to the minority shareholder the buy in of the shares at the fair value. That Indiana Law considers the action of the majority shareholder in "freezing out" or terminating as an employee a minority shareholder is deemed to be a dishonest or fraudulent action as evidenced by not offering a fair price for Carolyn's stock at the time of the separation of the relationship.

In this instance Daniel had no legitimate, lawful reason for discharging Carolyn which furthered or was in the best interest of Henry Cap Construction. The fair value of the shares of stock were greatly increased for which Daniel is personally liable to Carolyn including the reimbursement of her Attorney Fees which in this case constitute thousands of dollars for the

litigation now pending. In response to the intentional conduct of the Henry's, Carolyn initiated a lawsuit on or around December 22nd 2008, against in the state of Indiana, in the St. Joseph County Circuit Court, Cause No.71C01-0812-PL-00280, Honorable Judge Michael G. Gotsch and just before judgment could be rendered, the Henry's filed for Bankruptcy protection.

      6.   <u>Statement of Defendants' Defense and a Summary of the Facts to be Proven</u>

Defendants have had a difficult time ascertaining what exactly is being alleged and what relief is being sought by the Plaintiff through her Complaint.  Plaintiff has been wildly throwing accusations against Defendants since December of 2008 and, unfortunately, has never been able to enunciate any cogent theory of recovery.

As it pertains to this Adversary Proceeding, Defendants now understand that Plaintiff is seeking an order finding the alleged debt from Defendants to Plaintiff is nondischargeable under 523(a)(4) and (a)(6).  Plaintiff is not seeking to set aside fraudulent transfers.  Plaintiff has withdrawn any objection to discharge that was made under § 727.  As it pertains to the claims that have not been abandoned, Plaintiff's statement is as follows:

      **A.  *Plaintiff's claims of willful/malicious injury, embezzlement and defalcation within a fiduciary capacity should all fail.***

The questions for this Court to answer, based on the evidence presented are: (1) whether the Defendants stood in a fiduciary relationship with Plaintiff within the meaning of 523(a)(4); (2) if so, whether Defendants committed defalcation while acting within that fiduciary capacity; and (3) whether Defendants embezzled funds owed to the Plaintiff.  In addition, Plaintiff claims willful/malicious injury under 523(a)(6) predicated upon the same facts.  Plaintiff will fall well short of her burden on all three questions.

5

*Brief Summary of Facts to be Proven at Trial*

The evidence will demonstrate that Dan Henry and Plaintiff formed Henry/Cap Construction, Inc. in 2001. It was very successful. The initial stock ownership was 2/3 Dan Henry and 1/3 Plaintiff. Over time, additional capital calls were made. Plaintiff did not participate in the capital calls and her ownership share was reduced to 19.05%. Until 2008, both Dan and Plaintiff were employed by the company. Dan Henry principally ran the operations of the company while Plaintiff set up and maintained the corporation's books.

Importantly, when Plaintiff set up the books for the corporation, she included accounts chargeable to both herself and Dan Henry for any personal expenses of either of them that were paid by the company. Each time a personal expense showed up on the corporate credit or debit card, it would be booked as a payable from the shareholder to the corporation. It was the regular practice of both Dan Henry and Plaintiff to make such expenditures and refund the corporation.

In 2008, for reasons that are still unknown to Defendants, Plaintiff stopped showing up to work. Dan Henry attempted to communicate with Plaintiff regarding her reasons but was never provided with any response. Ultimately, due to her failure to come to work, Plaintiff's employment was terminated.

Like most construction and real estate businesses, 2008 and 2009 were extremely tough for Henry/Cap. It sustained losses of over $300,000 in 2008. It never fully recovered. Weighed down with mounting obligations to banks, several unions, and professionals, Henry/Cap ceased business in 2011. It formally dissolved in February of 2013.

In the interim, between 2008 and 2011, Dan Henry infused over $300,000 of his own funds (i.e. his life savings and retirement) to keep the company afloat. Additionally, Dan Henry regularly failed to take a paycheck, or took discounted paychecks, during this time. At the time

Henry/Cap dissolved, the company owed Dan Henry approximately $250,000. During that entire time, Plaintiff failed to contribute, in any way, to the operations of the Company; rather, she continued to pursue state claims against both Dan Henry and Henry/Cap in state court—further diverting the company's resources from its operations.

After Henry/Cap failed, Dan Henry attempted to start a new, small construction company. That company also failed and Dan and Jean Henry were left with no choices but to seek bankruptcy protection through this Court.

*Defalcation while acting in a Fiduciary Relationship*

Section 523(a)(4) of the Bankruptcy Code excepts from discharge, among other things, any debt for "defalcation while acting in a fiduciary capacity." Before the Court can find a debt nondischargeable under this exception, the Court must find that a fiduciary relationship existed between the debtor and creditor and that the debtor committed defalcation in the course of that fiduciary relationship. *See, In re Grotrian*, 217 B.R. 1017, 1020 (Bankr.N.D.Ind. 1997). Moreover, as the Supreme Court recently found in *Bullock v. BankChampaign*, 133 S.Ct. 1754 (2013), proving defalcation requires a showing of wrongful intent.

Plaintiff cannot sustain this burden. First, to the extent Henry/Cap paid personal expenses of Dan Henry, such expenses were booked as a payable from Dan Henry to the corporation. It was done in the open and with every intention of paying back the corporation. Moreover, Dan Henry infused his life's savings and retirement into the company between 2008 and 2011. This amount completely offsets any amounts payable by Dan Henry to the company and, in fact, at the time the company dissolved, it owed Dan Henry a substantial amount for the loans he made to the company.

*Embezzlement*

The Bankruptcy Code does not allow a debtor to discharge a debt incurred as a result of the debtor's embezzlement. Embezzlement has long been defined as the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." To prove embezzlement, a creditor must show that a debtor (1) appropriated funds for his or her own benefit; and (2) the debtor did so with fraudulent intent or deceit. *See, e.g. In re Taylor*, 58 B.R. 849, 855 (Bankr.E.D.Va. 1986).

Once again, Plaintiff will fall short of her burden. While certain, minimal expenses[1] were paid for Dan Henry by the corporation, the expenses advanced were booked as a payable back to the company by Dan Henry. There was never any intent to deceive anyone. In fact, booking expenses as a payable back to the company is the opposite of deceit. In any event, Dan Henry ultimately infused approximately $300,000 back into the Company, of which $250,000 was not paid back to him.

*Wilful and Malicious Injury*

For the most part, Plaintiff's contentions regarding willful and malicious injury seem to mirror the allegations made as far as defalcation and embezzlement and should fall as such claims fall; however, Plaintiff also seems to assert a separate injury by virtue of allegedly being wrongfully "frozen out" of Henry/Cap by the Defendants. This claim is contractual in nature. 523(a)(6) is means to cover intentional torts—not violation of the parties' contracts. *See, e.g., Ricks v. VonTobel*, 2013 Bankr.LEXIS 980, 4-6 (Bankr.N.D.Ind. 2013).

---

[1] See paragraph 13 of the Complaint wherein it lists the type of transactions Plaintiff complains of, such as gas, food, dry cleaning, athletic clubs, etc.

*Damages*

None of Plaintiff's claims against Defendants are direct claims. That is, her claims all allege that Defendants embezzled or defalcated funds belonging to Henry/Cap, and from such action, she suffered harm as a shareholder of Henry/Cap. While Indiana allows shareholder in closely held corporations to pursue claims such as these, which are derivative in nature, through a direct lawsuit against a shareholder,[2] the damages recoverable remain derivative. Plaintiff bears the burden of proving that she would receive any funds returned to the corporation by Dan Henry. Plaintiff will be unable to do so.

At the time it dissolved, Henry/Cap was facing debts well in excess of $500,000 to third-parties (and not including its debts due and owing to Dan Henry). Under the absolute priority rule and general principles of corporate law, those debts would need to be satisfied before any distribution could be made to shareholders of Henry/Cap. Accordingly, to prove a debt owed to her, Plaintiff would first need to demonstrate Defendants embezzled an amount exceeding Henry/Cap's debts. Plaintiff's damages would be limited to 19.05% of anything in excess of this amount.[3] Moreoever, Plaintiff has demonstrated no contractual or legal entitlement to the award of any attorneys' fees.

7. <u>Stipulations to Relevant and Undisputed Facts.</u> There are no express stipulations to relevant and undisputed facts at this time; however, certain ucontested background facts are implicit in the parties' contentions.

8. <u>Statement Identifying any Contested Facts.</u> The contested facts are implicit in the parties' statements.

9. <u>Any Contested Legal Issues.</u>

    a. Whether Defendants owed and/or breached any fiduciary duty owed to Plaintiff;

---

[2] *See Barth v. Barth*, 659 N.E.2d 559 (Ind. 1995).
[3] *See G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227 (Ind. 2001) (Affirming award to minority shareholder of unpaid dividends based on shareholder's ownership percentage).

9

b. Whether Defendants embezzled funds belonging to Henry-Cap Construction, Inc. that were owed to Plaintiff;

c. Whether Defendants defalcated funds or records belonging to Henry-Cap Construction while acting in a fiduciary capacity which resulted in damages to Plaintiff.

10. <u>Plaintiffs' Exhibits.</u>

    a. Articles of Incorporation Henry-Cap;
    b. Records concerning payments to Robert Henry;
    c. Recorders concerning Henry Enterprises;
    d. Shareholder Agreement;
    e. Coding Report;
    f. Records relating to rental payments to Defendants;
    g. Documents related to federal lawsuit in the Southern District of Indiana;
    h. Freeze-Out Termination Letter;
    i. Benton Street Property Transfer Paper;
    j. Clay Street Property Transfer Paper;
    k. Corporate Credit Card Statements;
    l. PNC Bank Statements;
    m. Company E-mails;
    n. Corporate Tax Returns (2007, 2008, 2009);
    o. Auto Insurance Payment Paper;
    p. UCC Filing and Financing Statements;
    q. Depositions of CPA and Bookkeeper;
    r. Bank account statements;
    s. Tax records;
    t. Other court records.

11. <u>Defendant's Exhibits.</u>  Defendants may offer any or all of the following exhibits at trial:

    a. Henry/Cap Bylaws;

    b. Shareholder accounts payable records of Plaintiff to Henry/Cap documenting personal expenses paid by the company on her behalf;

    c. Shareholder accounts payable records of Dan Henry to Henry/Cap;

    d. Checks evidencing loans made by Dan Henry to Henry/Cap and Henry/Cap's Quickbooks records regarding such loans;

    e. Tax Returns and related documents, including forms W-2 and 1099, for Dan and Jean Henry for 2012, 2011, 2010, 2009, 2008, 2007, 2006, 2005, 2004, 2003, 2002, and 2001;

    f.   Corporate tax returns filed on behalf of Henry/Cap from 2008 through 2012;

    g.   Ledger Card Reports/wage payment history for Dan Henry;

    h.   Loan documents made by Robert A. Henry to Henry/Cap and/or Dan Henry for the benefit of Henry/Cap;

    i.   Transcript of deposition of Judy Gushwa;

    j.   Transcript of deposition of Greg Jurgonski;

    k.   Transcript of the deposition of Allison Swinehart

    l.   Correspondence between Defendants' counsel and the Trustee as well as between the Trustee and Plaintiff's counsel;

    m.   The pleadings;

    n.   Demonstrative summaries of loans and funds paid by Defendants to Henry/Cap; and

    o.   Any documents necessary for rebuttal or impeachment.

12. <u>Plaintiffs' Witnesses.</u>

   a. Plaintiff;
   b. Defendants;
   c. A representative of Schmanski Jurgonski & Fredlake;
   d. Judy Gushwa;
   e. Attorney Jeffery A. Johnson;
   f. Attorney Jennifer ElBenni;
   g. Attorney Trevor Gasper;
   h. Attorney Brett Hummer;
   i. Attorney Gary D. Boyn;
   j. Counsel or a representative for Construction Workers Pension Fund;
   k. Counsel or a representative for CBA Escrow EAC Local #4;
   l. Counsel or a representative for CAF Laborers 41/81;
   m. Counsel or a representative for Bricklayers International Pension Fund;
   n. Frank DeGraw, Trustee, or another representative from Indiana Laborer's Welfare Pension and training funds;
   o. Attorney Frederick Denerline III;
   p. The Estate of Robert Henry (or a representative from the law firm Anderson Agostino & Keller);
   q. St. Joseph County Recorder's Office;
   r. St. Joseph County Assessor's Office.

Defendants specifically object to any attempt to call Jeffery A. Johnson, Jennifer ElBenni, Trevor Gasper, and Brett Hummer as witnesses to this matter.

13. <u>Defendant's Witnesses.</u> Defendants witnesses may include any or all of the following witnesses at trial:

   a. Defendants;
   b. Plaintiff;
   c. Judy Gushwa;
   d. Timothy Short;
   e. Don Rohrer;
   f. Tom Henry;
   g. Lauren Davis, CPA;
   h. Wayne Stewart;
   i. Terry Hickey;
   j. William Batteast
   k. Any and all rebuttal or impeachment witness;
   l. Any witnesses listed by Plaintiffs

14. <u>Trial.</u> The trial will be to the bench; the probable length will be 2 days.

_____
Judge,
United State Bankruptcy Court

/s/ Blake N. Dahl
Blake N. Dahl
Gordon Etzler & Associates, LLP
251 N Indiana Ave.
Valparaiso, IN 46383
Tel: (219) 531-7787
Fax: (219) 531-4732

/s/ Trevor Q. Gasper
Jeffery A. Johnson (5009-71)
Trevor Q. Gasper (26368-71)
MAY OBERFELL LORBER
4100 Edison Lakes Pkwy., Ste. 100
Mishawaka, Indiana 46545
Tel: (574) 243-4100
Fax: (574) 232-9789