UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 12-34152 |
| DANIEL THOMAS HENRY and | ) | Chapter 7 |
| MARGARET JEAN HENRY | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| CAROLYN A. VENDRAMIN, | ) | |
| | ) | Adv. Proc. No. 13-03061 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL THOMAS HENRY and | ) | |
| MARGARET JEAN HENRY | ) | |
| | ) | |
| Defendant. | ) | |

**POST-TRIAL BRIEF**

Pursuant to the Order of the Court dated January 23rd 2015, Attorneys for the parties to this action were instructed to submit post-trial briefs with regard to the issues raised in the adversary proceeding held in Fort Wayne Indiana. Specifically, this brief will address (1) Standing, whether a minority shareholder in a closely held corporation[1] of the state of Indiana has the standing or right to bring a private or direct action against the corporation, rather than proceed with a derivative action; (2) Damages, what damages were sustained as a result of the Henry's conduct; and (3) Supported Arguments in anticipation of the Henry's response.

---

[1] A closely-held corporation is one which typically has relatively few shareholders and whose shares are not generally traded in the securities market. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 **N.E.2d** 564, 570 *(citing* F. Hodge O'Neal & Robert B. Thompson, *O'Neal's Close Corporations* § 1.02 (3d ed.)). *Accord,* American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 1.06(1994).

1

## STANDING

In <u>*Barth v. Barth*, 659 NE 2d 559 (1995) - Ind: Supreme Court</u>, the minority shareholder brought a lawsuit individually, rather than derivatively on behalf of the corporation, against the closely held corporation and the majority shareholder. The minority shareholder alleged that the majority shareholder had paid excessive salaries to himself and to family members, used corporate employees to perform personal services without compensating the corporation, dramatically lowered dividend payments, and appropriated corporate funds for personal investments. The court held that because this was a closely held corporation, the trial court in its discretion could treat the minority shareholder's action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it found that to do so would not: (i) unfairly expose the corporation or the majority shareholder to a multiplicity of actions: (ii) materially prejudice the interests of creditors of the corporation: or (iii) interfere with a fair distribution of the recovery among all interested persons.

In <u>*G & N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227 (Ind. 2001)</u> the court held that plaintiff's direct action was appropriate. It did not multiply litigation, there were no creditors in need of protection, and no concern that plaintiff's recovery would interfere with a fair distribution of the benefits of the suit. Defendant director's acquisition of majority control was accomplished by a plan that included an intentional misuse of corporate office for personal gain to squeeze plaintiff out. Defendant director breached his fiduciary duties by pursuing his own personal interests at the expense of defendant corporation when he plotted to merge his corporations and use cash flow to pay off debts of his other businesses and himself.

In <u>*Yessenow v. Hudson*, 2009 U.S. Dist. LEXIS 46369 (N.D. Ind. June 2, 2009)</u>, The distinction between derivative and direct claims is complicated in the situation of LLCs. *See*

2

*Purcell*, 847 N.E.2d at 1001. LLCs often have few members, who are regarded more as partners with direct obligations to one another than as mere shareholders in a corporation. *See id*. The Court may therefore, in its discretion, treat a claim by one member against another member as a direct action if it determines that form of action would not: (1) unfairly expose the LLC to a multiplicity of actions; (2) materially prejudice the interests of the LLC's creditors; or (3) interfere with a fair distribution of the recovery among all persons with an interest in the claim. *Id.; see also Barth v. Barth*, 659 N.E.2d 559, 562 (Ind. 1995).

In the present case at bar, the parties were members of a close corporation where the only shareholders were the Henry's (as majority shareholders), and Vendramin (as minority shareholder). Vendramin, as in the previously cited cases brought a direct action against the corporation and the majority shareholders alleging intentional torts (amongst others) embezzlement, fraud, defalcation of records, usurping corporate opportunities for alter ego entities, use of corporate funds for personal use. Indiana case law has long established the right of an injured minority shareholder to bring a direct claim against the majority shareholders; as such Vendramin has an established right to bring a direct action against the Henry's for their conduct.

Carolyn Vendramin has brought these proceedings objecting to discharge of the Henrys because of their fraudulent action (an intentional action) in using the company funds for personal use then engaging in a freeze out process of making her ownership interest in Henry-CAP Construction, Inc. of no value. Carolyn has demonstrated to the court during the hearing that her objection to the Henrys' personal bankruptcy discharge should be granted in order for Carolyn to pursue her state claim to recover her investment and resulting damages. Although, Henry-CAP as a corporation has also suffered damages by the action of the Henrys under Indiana Law, Carolyn

3

is permitted to pursue her action in State Court as a derivative action. *G&N Aircraft Inc. v. Boehn*, 743 N.E.2d 227 (Ind. 2001).

The price paid for shares of stock or contribution (investment) is irrelevant when determining present value of shares, except to determine one's own individual capital gains or losses for income tax liability purpose.

Personal services rendered as an owner to the operations and management of a Sub S corporation have intrinsic value, enhances value to an entity, and can be legal consideration in exchange for shares of stock issued.

A part of the implementation of Daniel and Attorney Johnson's plan to organize was to create the foundation for the legal position that Carolyn would be employee at will and could be expelled or terminated from active participation in Henry-CAP for any purpose, intending to cut off her personal income, without buying her shares, refusing to offer a fair and good faith share value to remove her from the Board of Directors and to not pay her any dividends or even to reimburse her for her income tax liability arising from undistributed income of Henry-CAP.

Under Indiana law, in a closely held corporation, where the share price is not determined or set forth by agreement, such as a buy-sell agreement, a redemption agreement or a cross-purchase agreement between shareholders; where there is no public open market in default or absence of price or there is no agreed method provided by contract for determining price, the law infers and supplies the valuation method.

In *Battershell v. Prestwick Sales, Inc.*, 585 N.E.2d 1 (Ind.Ct.App. 1992), the Court stated that in default of an agreed price or method of determining by the parties value of corporate shares, the law implies that the formula to determine value is "fair value." The court found authority for this legal preposition to be under the Indiana Business Corporation Law. I.C. 23-1-44-3 *et seq.*, p.

4, 5. The BCL's proper method is "fair value" not "fair market value." The Court decisions affirming the use of a default method to determine price if the parties do not so elect, which is "fair market value" were decided before the enactment of new Business Corporation Law. The new business corporation law changed the measure of value to "fair value" instead of "fair market value." *Battershell* at 12, footnote 3.

Also, by law to be excluded from consideration in computing this fair value method, for valuing shares of a closely held corporation, are the following factors or circumstances: 1) the price initially paid for the shares; 2) the risk taken by persons guaranteeing the debt of the corporation; 3) the length of time the risk was incurred, their benefit of the bargain, and further conduct by the shareholder. *Id.* at 12, 13. These factors are irrelevant to the method of fair value valuation and are not to be considered.[2]

The term "fair value" is not intended to have the same meaning as "fair market value". Fair value is the legal concept of measurement of value of shares of stock whose purpose is to insure that a minority shareholder be fairly compensated and may very well not equate to a general market value of the stock's value; while market value denotes the share price as value which results from arm lengths negotiations on a open market with both seller and buyer willing but not obligated to make a transaction. *Wenzel v. Hopper & Galliher, P.C.*, 779 N.E.2d 30, 38 (Ind.Ct.App. 2002). A closely held corporation contemplates no public market and no available buyers but requires the use of fair value not market value as the measure of value of shares in a closely held corporation.

Furthermore, because there is not a ready market for shares of a closely held corporation, when the shares of a minority shareholder are purchased by the majority shareholder or

---

[2] In *Krukemeier v. Krukemeier*, 551 N.E.2d 885, the Court recognized that a freeze out of a minority shareholder could be accomplished by refusing to purchase shares at a fair value price. *Id.* at 890. See also *Fleming v. International Pizza Supply Corp.*, 676 N.E.2d 1051, 1057-1058 (Ind. 1997) which held that misconduct in the appraisal process is also a breach of fiduciary duty to a minority shareholder.

5

disregarded, the appraisal business valuation's concepts of minority and marketability concepts are not to be applied, but are excluded. *Id.* at 38. These discounts are not recognized and valued as factors to reduce value because in a closely held corporation, there is no open market for the shares and if the majority shareholders are not required to buy the shares a plan to freeze out the minority shareholder would be complete without any remedy to the minority. *Id.* at 38 and footnote 6. The circumstances applying minority discounts have little validity when the purchase is by a shareholder who already has corporate control. *Id.* at 38; and unfairly enriches the majority shareholders. The *Wenzel* Court completed its legal analysis by determining that minority or marketability discounts are not to be applied. *Id.* at 39. It should also be noted that *Wenzel* also determined that the minority shareholder would be entitled to reimbursement of attorney fees and costs and expenses of valuation for a "low ball" offer. *Id.* at 48, footnote 8. See also *Fleming v. International Pizza Supply, Corp.*, 676 N.E.2d 1051 (Ind. 1997).

In the State Court action, Carolyn was ready to present an appraisal value of her shares at two hundred and seventy five thousand dollars ($275,000).

Carolyn is also entitled to prejudgment interest, as well as post judgment interest, on the value of here shares in order to have full remedy and compensation. *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227.

Therefore, not having a predetermined price for shares or not agreeing to a price at the time Daniel and Carolyn agreed to sell/buy shares does make their contract unenforceable, since that term is supplied by law as "fair value."

6

Case 13-03061-reg    Doc 49    Filed 03/24/15    Page 6 of 18

**Employment Relationship was Not Created Between Carolyn, Daniel and Henry-CAP**

Under Indiana law the employment relationship is contractual, arising from the parties meeting of minds after an offer by one and acceptance by another. *Rensing v. Indiana State University Bd. of Trustees*, 444 N.E.2d 1170 (Ind. 1983). The Court stated, "The primary consideration is that there was an intent that a contract of employment did exist." In other words, there must be a mutual belief that an employer-employee relationship did exist. *Id.* p. 1173. Although there are ten (10) criteria to determine whether an employment contract exists, the two compelling basic criteria of the relationship, upon which all other terms of employment are based, are that one employed is subservient to and subject to the principal employer's control and direction as to all phases of the conduct of the work, including the ultimate result, and that there is a mutual belief that the relationship existed. Restatement (Second) of Agency § 220 (1) (1958). *Rensing v. Indiana State University Bd. of Trustees*. 444 N.E.2d 1170 (Ind. 1983); *Moberly v. Day*, 757 N.E.2d 1007 (Ind. 2001). These concepts are confirmed by *Walker v. Martin*, 887 N.E.2d 125 (Ind.Ct.App. 2008), which defines "employee" as "one employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." *Id.* at 131. The Court stated of the ten-factor test, the "extent of control' is the single most important factor in determining the existence of an employer-employee relationship." *Id.* at 131.

However, in its corporate organization, neither Daniel nor Carolyn was to be considered an employee of Henry-CAP. The contract between them was formed at the pre-organizing stage was by the acceptance by each of the terms of the "Business Plan".

The two identify themselves as "partners" in the Henry-CAP venture. The name itself Henry-CAP represents the last name of Daniel and the first name of Carolyn, both as equals, none

7

being a superior or in a superior positon or level. Neither is subject to or superior/subservient to or over the other.

There is no inference from testimony of an employment status only as equal partners. The statements by Daniel indicate that he considered Carolyn to be an equal partner with himself.

Daniel might argue that Carolyn's signing forms required by IRS, Indiana Department of Revenue or other purposes is an admission of her employment status. However, each of these forms is signed for a separate and distinct purpose, such as tax collection and government reporting, not as an affirmative declaration by either, her employment relationship, and everyone agreeing to that status. The right to share proportionally based on share ownership in the profit of Henry-CAP supports the legal position that Carolyn was a co-owner, not an employee. Partners do not receive compensation for services rendered to the entity, but a share of net profits generated and earned. IRS has changed the method of tax reporting, this so that each partner has to periodically pay income, and social security taxes, and not treat monies identified as dividends for their services at a lower tax rate than income taxes. Signing such tax form shows compliance with federal and state tax regulations, but does nothing to demonstrate employment status.

In Carolyn's case, the co-owners of Henry-CAP agreed to receive regular draws throughout the year, as the means by which to distribute profits of the company. These draws are reflected as a share of profit on each owner's withholding forms and its K-1 tax statements, but as distributed profits to owners rather than wages. Carolyn's situation is similar to that in *United Farm Bureau*, where the partners shared profits. 602 N.E.2d at 175. As a Sub S corporation shareholder, Carolyn certainly had the obligation to realize and report profits and losses in the company and pay taxes on such profits. This general rule may be altered by express or implicit agreement to distribute

8

over the year profits on a periodic basis as long as such process is in compliance with tax regulations. *United Farm Bureau*, 602 N.E.2d at 175.

There is no evidence such as an employment contract, letter or Director's resolution designating any of the two as an employee or especially as an employee at will. There is no document or agreement, oral or written, which demonstrates that they contemplated their legal relationship each to the other or to Henry-CAP as an employee. There is no evidence that either Daniel or Carolyn experienced supervisory control and direction over the other and over the areas designated to each. Carolyn has never submitted, subrogated, or subjugated her work efforts to Daniel's approval or direction, only to the outside accountants. Daniel expelled Carolyn attempting to penalize her and attempting to make her forfeit her share of Henry-CAP cash and ownership.

However, because individual personalities and perceptions between owners are difficult to control between equal partners/shareholders, or other ownership issues are created, the more rational and reasonable process is to discuss options such as to adjust the percentages of draws, but not to use the "nuclear" option of Carolyn's expulsion. In the Massachusetts case of *Wilkes v. Springside Nursing Home, Inc.*, 353 N.E.2d 657, which was given great weight in the Indiana Supreme Court case of *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 240 and *W & W Equipment Co. v. Mink*, 568 N.E.2d 564, 574, the Court state "…we think it is open to minority stockholders to demonstrate that the same legitimate objective (expulsion) could have been achieved through an alternative course of action less harmful." *Id.* at 663. Meanwhile, instead they could have given themselves and each other bonuses, increased the amounts of their draws, and increased their contribution to their retirement plans.

9

The evidence and inferences from the evidence show that Carolyn's relationship was not as an employee, but that all management and control was exercised by consensus of both. The main criteria is did the parties believe themselves to be partners not employees; clearly they believed themselves to be partners.

### **Incorporated Partnership**

Furthermore, Indiana law concerning closely held corporations supports Carolyn's position that she is not an employee. Business partners in a closely held corporation have the same relation to one another as do partners in a partnership. "Indiana recognized the principle of 'incorporated partnership,' as a hybrid of the corporate form and a partnership." *Cressy v. Shannon Continental Corp.*, 378 N.E.2d 941, 945 (Ind. App. 1978).

The Appellate Court stated:

> While parties incorporate to obtain the benefits of limited liability, perpetual existence of business entity or tax considerations accruing to the corporate form, they often expect to act and to be treated as partners in their dealings among themselves. When this intention is manifest and no harm results to outsiders thereby, there appears little reason to frustrate the parties' actual intent by strict adherence to the traditional norms of corporate law. *Cressy*, 378 N.E.2d at 945.

As further explained in *Krukemeier*, this notion of an "incorporated partnership," means that shareholders owe a fiduciary duty to one another in a close corporation, the same as partners in a partnership, and must do so equitably. *Krukemeier v. Krukemeier Machine & Tool Co.*, 551 N.E.2d 885, 888 (Ind.App.Ct. 1990). Partners do not have an employer/employee relationship. *Ind. Civil Rights Comm. v. Kightlinger*, 567 N.E.2d 125, 129 (Ind.App.Ct. 1991). The courts recognize it puts the partner in an "anomalous position" if he were an employee of the partnership, he would then be his own employer. *United Farm Bureau Mutual Ins. Co. v. Schult*, 602 N.E.2d 173, 175 (Ind.App.Ct. 1992).

10

The equal nature of the relationship between business partners indicates that no partner has an employment relationship with any other partner. In *Ind. Civil Rights Comm.*, partners of a law firm expelled another partner, Lawlis, who claimed discrimination in employment under the Indiana Civil Rights Law. 567 N.E.2d 125, 126. In order for the Indiana Civil Rights Law to apply to Lawlis' situation, the court was required to find that Lawlis was an employee of the partnership. *Id*. Lawlis received his share of profits, rather than wages, which indicated that he was a co-owner, rather than an employee. *Id*. at 129. The court held that partnership is "a shared enterprise" between partners, and this arrangement did not result in Lawlis being an employee of the partnership. *Id*. at 130. Lawlis' equal status with the other partners indicated that he was a partner, rather than an employee. *Id*.

Sharing profits with the other members of the partnership, demonstrates she does not have the legal status of an employee. In *United Farm Bureau*, the insurance company argued that their policy did not apply to an injury occurring in the course of employment, but the members of the partnership argued that the injured party was not an employee. 602 N.E.2d at 174-75. The injured partner shared profits, instead of receiving a salary as an employee would. *Id*. at 175. The court recognizes that partners are not entitled to payment as an employee for services rendered to the entity. *Id.* The court in *United Farm Bureau* held that there was not an employee relationship between the partners, since the injured partner received no compensation other than his share of profits, and mentioned that finding otherwise would also result in the strange situation of partners being considered their own employers. *Id*.

A compelling element of evidence that Daniel and Carolyn are not employees is that their periodic distributions are based upon Henry-CAP generating net income. Although employees must be paid, as well as employment withholding trust funds must be paid, each have their own

tax liability responsibility to IRS. If net profit is not earned, employees must be paid, but not the two as partners, they take what is earned, or take nothing.

### **Business Judgment Rule Is Inapplicable**

Indiana law follows the business judgment rule, I.C. 23-1-35-1, which provides protection to the Board of Directors from decisions made in good faith in the best interests of the corporation, but with such care as an ordinary, prudent person in a like position would use under similar circumstances. This statute sets forth a number of factual preconditions for protection from liability under I.C. 23-1-35-1. Because Daniel violated his fiduciary duty demonstrating bad faith to obtain an advantage for his own private purpose and interest and not of Henry-CAP, the Rule is inapplicable.

These factual preconditions protect only a member of the Board of Directors, but by its language do not extend protection to self-serving decisions of a shareholder/partner. Secondly, the decision and its motivation must be solely directed to the interest and welfare of the organization, and requires that the Board member act in good faith and in honest belief that the action taken was in the best interest of the company. Thirdly, the member must act as would an ordinary, prudent person in like position and in similar circumstances. *Brane v. Roth*, 590 N.E.2d 587 (Ind.Ct.App. 1992). Daniel and his wife Jean failed each of these tests, they acted for their own interests, in bad faith and not meeting the prudent person standard.

### **As Partners a Fiduciary Duty is Created**

The legal authority to fire an employee without cause under the doctrine of employment at will is not superior to or defense to the claim of breach of fiduciary duty caused by the majority shareholders who is not acting in good faith, fairly, honestly and openly with the minority shareholder/partner. In *W&W Equipment Co., Inc., et al v. Mink*, 568 N.E.2d 564, p. 573, as a

12

defense to claim of breach of fiduciary duty the Defendants argued that an employee at will can be discharged without cause. But, the Court ignored both the employment at will defense as well the minorities claim for wrongful discharge of employment stating "...simply found that aspects of the way Mink was terminated were dishonest, thus causing a breach of the fiduciary duty owed to him." The Court then stated its reasoning:

> As noted by the Massachusetts Supreme Court, the denial of employment to a minority shareholder in a close corporation "is especially pernicious in some instances." *Wilkes v. Sprindside Nursing Home, Inc. (1976), 370 Mass. 842, 353 N.E.2d 657, 662*. A minority stockholder typically depends on his salary as the principal return of his investment, since the earnings of a close corporation are mainly distributed as salaries, bonuses, and retirement benefits. *Id.* W&W never issued a dividend, so the only return the shareholders received was through employment and the sale of their stock. The trial court did not allow Mink to pursue an action for wrongful termination; it simply recognized his termination as one aspect of the overall unfair and dishonest scheme to obtain the money Winter wanted. *Id.* at 574.

In *Hartung v. Architect Hartung/Odle/Burke, Inc.*, 301 N.E.2d 240, the Court also determined that the actions of the majority in weighing breach of fiduciary duty must be viewed from the point of concern from the entity's interest as meeting their official duty and not by the shareholders considering their own private interest. Carolyn's expulsion was clearly so Daniel and his wife could continue to withdraw income and shows personal expenses as business expenses.

When these factual and legal points are applied to the facts, the status of employment is a factual issue with the conclusion that Carolyn was not an employee of Henry-CAP. The nature of the relationship between Carolyn and Daniel was co-owners, rather than an employee. Carolyn and Daniel were officers of the Board of Directors, and each had equal rights of management and oversight of the company. When Daniel and Carolyn set out to form Henry-CAP, their agreement

13

was for both parties to become shareholders, not for one to be an employee and subservient to the others. The nature of this "shared enterprise," like that in *Ind. Civil Rights Comm.*, indicates that Carolyn was an owner/partner, not an employee of Henry-CAP. Just as Lawlis had an equal status with the other partners in *Ind. Civil Rights Comm.*, Carolyn has an equal status in responsibility and duties with Daniel. Since the court in *Ind. Civil Rights Comm.* held that Lawlis' equal status resulted in his not being considered an employee, Carolyn, too, must not be considered an employee.

The Mink Court sets forth the shifting burden of proof from Plaintiff to Defendant in a breach of fiduciary duty and adopted the ruling in *Dottich v. Dottich*, 475 N.E.2d 331, p. 342:

> Once it is established that one with a fiduciary duty has attempted to benefit from a questionable transaction, the law presumes fraud. (emphasis)
>
> The burden of proof then shifts to the fiduciary to overcome the presumption by showing his actions were honest and in good faith. (*W&W Equipment Co., Inc., et al v. Mink*, 568 N.E.2d 564, p. 573)

### Freeze Out As Fraud

The *Mink* Court also noted that the Court looks to review Defendant's action as breach of fiduciary duty and constitutes a "freeze-out," from the point of view of the entity. It stated that a "freeze-out" effect is to eliminate the minority from the enterprise or reduce their voting power or their claims on corporate assets. *Id.* at p. 574. The question is does the expulsion of the minority shareholder satisfy the intents of the individual majority shareholder desires, or is it truly incident to other entity's business goal, i.e. was it motivated by a valid business purpose. This is a sub-issue for determining the breach of fiduciary duty by Defendants.

In Carolyn's circumstances, the true motivation and reasoning behind her expulsion was to unjustly blame her loss of bonding authority because of Daniel's personal use of company funds

14

over company management policies by forfeiting her involvement with Henry-CAP and her economic interest as a shareholder in Henry-CAP.

Accordingly, these circumstances by themselves are evidence of breach of Daniel's fiduciary duty to Carolyn, as will be further discussed in that section of this Memorandum.[3]

### There Is No Legal Justification to Expel Carolyn; But A Pretext to Cover Up Defendants' attempt to Defraud Tax Authorities

Daniel argues he expelled Carolyn because she did not do her job. Henry-CAP's accountants say Carolyn was competent and did a satisfactory job.

Furthermore, within the issue of breach of fiduciary duty are related underlying issues of fact of whether on behalf of Henry-CAP there was a legitimate business purpose for Carolyn's expulsion, whether the same legitimate objective could have been achieved by an alternative course of action less harmful to Carolyn's financial interests, was Carolyn incompetent and any perceived injury, damage or interference to Henry-CAP severe enough to justify expulsion. Daniel provided no showing that payment was ever offered to buy Carolyn's shares at a "fair value".

### Carolyn's Expulsion was Breach of Fiduciary Duty and Constitutes Fraud

Carolyn's expulsion cannot be justified as having a business purpose in the interest of Henry-CAP, but was motivated by Daniel's self-interests clandestinely to withdraw company funds to evade taxes. The reason to expel Carolyn was to remove her from the company for disclosing Daniel and his wife's personal use of company's money so that they could continue their improper activity. Indiana deems their actions to constitute fraud. *Dotlich v. Dotlich*, 475 N.E.2d 331 (Ind. Ct. App. 1985).

---

[3] These circumstances also are the basis for the determination that the majority shareholder has engaged in concerted action of a "freeze out" of Carolyn which is a violation of his fiduciary duty to her and fraud. *G&N Aircraft, Inc. v. Boehm,* 743 N.E.2d 227 (Ind. 2001).

15

## Conclusion of Fraud

There was no vote to expelling Carolyn by the Board of Directors, including contemplating and weighing Carolyn's circumstances, considering the motivation of self-interest of Daniel, or discussing the adverse financial or operational repercussions on Henry-CAP.

Daniel's expulsion decision with or without his wife Jean was a personal act as individual shareholder/owner with no evidence that the expulsion of Carolyn was made and carried out in the best interest or welfare of Henry-CAP. The expulsion decision was for his own purposes and made recklessly, intentionally harmful, uncaring, and not in good faith. Carolyn's expulsion was solely in the economic interest of Daniel's ill will towards Carolyn. This freeze-out constitutes fraud.

The Court, under the facts presented and the law, must find that Henrys engaged in a plan to freeze out Carolyn by expelling her without prior notice from active participation in Henry-CAP so that they could proceed to operate the company in violation of good accounting practices and evade State and Federal tax laws for the classification of corporate deductions. The unintended consequences were that the value of Henry-CAP as an ongoing construction business enterprise faltered and then became insolvent. However, the Henrys attempted to evade these consequences by forming a new entity under Indiana law, transferring customer contacts, assets and business to the enterprise known as Henry-Enterprises LLC. To permit the bankruptcy to proceed and discharge the Henrys' debt and obligation to Carolyn would not permit her any chance of recovery or compensation for the fraud and resulting freeze out. Under Indiana law the Court is to presume that the Henrys' activities constitute fraud not only as to Carolyn but also to the corporation and its creditors. *Dotlich v. Dotlich*, 475 N.E.2d 331 (Ind. Ct. App. 1985); *Mink* supra. Although it is the Henrys' burden of proof to show that there were good business purposes and they acted reasonably and prudently the Henrys failed to bring any proof to meet their burden. The Court can

do nothing other than to find fraud in the actions of the Henrys in their relationship as majority shareholders and members of the Board of Directors who acted fraudulently, recklessly and intentionally against the financial interests of Carolyn.

## DAMAGES

The court in the very least should consider Vendramin's initial contribution of at least $33,000.00 but ultimately the value of her interest represented by the value of the business, its income and assets, at the time Vendramin was froze-out from the corporation. This total figure would need further development and analysis and should be determined by the State Court where this action originated from.

Wherefore, the Plaintiff in this action would ask the court to find the debt owed to Vendramin by the Henrys as non-dischargeable and make a later determination as to the total figure on damages or in the alternative, declare the debt non-dischargeable and send back to the State Court to determine the total figure of damages as the original court as heard argument on this issue in great detail.

Respectfully Submitted

GORDON ETZLER & ASSOCIATES.


/s/ Gordon Etzler_____


/s/ Blake N. Dahl_____

## CERTIFICATE OF SERVICE

I certify that on the 24th day of MARCH, 2015, service of a true and complete copy of the above foregoing pleading or paper was made upon each party or attorney of record herein by hand delivery and/or depositing the same in the United States Mail/Courthouse mail in envelopes properly addressed to each of them and with sufficient first class postage affixed.

COUNSEL FOR DEFENDANT HENRYS

I further hereby certify that the foregoing document complies with the requirements of Trial Rule 5 (G) with regard to information excluded from the public record under Administrative Rule 9(G).

_____
Blake N. Dahl   30576-64